UNITED STATES of America,
Plaintiff–Appellee,

v.

David W. REIFSTECK,
Defendant–Appellant.

No. 87–3759.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1988.

Decided March 9, 1988.

Timothy J. Deardorff (argued), Deardorff & Rebel, Cincinnati, Ohio, for defendant-appellant.

Kathleen M. Brinkman (argued), Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

Before MILBURN and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

David W. Reifsteck appeals his conviction of conspiracy to unlawfully use electronic devices in violation of 18 U.S.C. § 371. For the following reasons, we affirm the conviction.

### I.

David Reifsteck was a licensed investigator who operated his corporation, Domestic Investigations, Inc. DBA Corporate & Domestic Investigations, in Cincinnati, Ohio. The grand jury in the United States District Court for the Southern District of Ohio indicted Reifsteck and his corporation on two counts each relating to an incident in which Reifsteck allegedly conspired with two unindicted co-conspirators in violation of 18 U.S.C. § 371 and willfully and unlawfully used and endeavored to use electronic devices to intercept oral communications between or among certain individuals on the premises of the Baylis Company, Inc., a business establishment located in Cincinnati, Ohio which then affected interstate commerce in violation of 18 U.S.C. §§ 2511(1)(b)(IV)(A) and 2511(2).

Mr. Ludwig, an unindicted co-conspirator, contacted Reifsteck at Corporate & Domestic Investigations because Ludwig and his wife, the other unindicted co-conspirator, were concerned about Mrs. Ludwig's job security. Mr. Ludwig had found Reifsteck's phone number in the yellow pages under "private detective." At a meeting, Mr. Ludwig suggested that Reifsteck help him procure listening devices, and Reifsteck agreed to price the desired equipment. After pricing listening devices, Reifsteck contacted Mr. Ludwig and offered to complete the transaction for $600.

Mr. Ludwig accepted this offer and paid Reifsteck $600. Reifsteck had Mr. Ludwig sign a piece of paper stating that he was not a member of a police agency. Reifsteck purchased the listening devices and then arranged to meet Mr. Ludwig again. This meeting resulted in an agreement that Reifsteck would meet Mr. Ludwig at a restaurant called Arnold's that night with the listening devices to complete the transaction. That night the two men met at Arnold's and then proceeded to Mrs. Ludwig's office in the Baylis Company which was located in the same building as the restaurant. Because the equipment did not operate satisfactorily, Reifsteck took the equipment when he left in order to make further adjustments. Reifsteck accompanied Mr. Ludwig to the offices of the Baylis Company on one other occasion with the listening devices.

The case went to jury trial on May 29, 1987. The government's case in chief consisted principally of the Ludwigs' testimony. The Ludwigs testified that Reifsteck knew that they wanted to use the listening devices to eavesdrop on management meetings at Mrs. Ludwig's place of employment, and that on two occasions Reifsteck went to the Baylis Company where Reifsteck installed the listening devices in a conference room adjoining Mrs. Ludwig's office.

At the close of the government's case in chief, a motion for acquittal was made presumably on behalf of both defendants. The district court reserved ruling on this motion. Reifsteck proceeded with his defense.

Reifsteck denied knowledge of the intended use of the listening devices and denied that he installed them in the conference room. Reifsteck maintained that he merely sold the devices, which he had purchased from Radio Shack for $200, to the Ludwigs for $600. Reifsteck testified that he went to Mrs. Ludwig's office only to adjust the uninstalled devices. Additionally, Henry Middendorf, a former partner of Reifsteck's who was present during one of the meetings between Reifsteck and Mr.

Ludwig, testified that at that meeting Reifsteck told Mr. Ludwig that he would not install the devices and that Reifsteck told Mr. Ludwig that Reifsteck did not want to know why Mr. Ludwig wanted the devices. The court refused to admit the proffered testimony of Tom Schenck, a man who had purchased eavesdropping equipment from Reifsteck in the past. According to the record, Schenck would have testified that he was told that Reifsteck does not install equipment and that he did not discuss the intended use of the equipment with Reifsteck. The court, however, permitted Reifsteck to testify concerning the Schenck transaction.

At the close of all of the evidence, the motion for acquittal made on behalf of the corporation was renewed and granted by the district court. The charges against Reifsteck went to the jury. The jury found Reifsteck not guilty of the substantive offense but guilty of conspiracy. The district court entered judgment against Reifsteck on the conspiracy count and sentenced him to six months in prison.

This timely appeal followed.

## II.

Initially, appellant argues that the district court's reservation of ruling on appellant's motion for judgment of acquittal adversely affected his right to a fair trial by removing his option to not take the stand.

Federal Rule of Criminal Procedure 29 governs motions for judgment of acquittal. Rule 29 provides in relevant part as follows:

(a) **Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

(b) **Reservation of Decision on Motion.** If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

■ Courts have uniformly held that a trial court must rule on a motion for judgment of acquittal made at the close of the government's case in chief, and that it is error to reserve ruling. *See, e.g., United States v. Neary,* 733 F.2d 210, 218 (2d Cir.1984); *United States v. Conway,* 632 F.2d 641, 643 (5th Cir. Unit B 1980); *United States v. Rhodes,* 631 F.2d 43, 44 (5th Cir. Unit B 1980); *United States v. House,* 551 F.2d 756, 758 (8th Cir.), *cert. denied,* 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977); *United States v. Braverman,* 522 F.2d 218, 223 (7th Cir.), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *United States v. Wininger,* 427 F.2d 1128, 1129 (6th Cir.1970) (per curiam). *See also* 2 C. Wright, *Federal Practice and Procedure* § 462 at 640 (2d ed. 1982).

Although courts have uniformly recognized that it is error to reserve ruling on a Rule 29(a) motion made at the close of the government's case in chief, they have also held that the error is harmless if at the close of the government's case in chief the evidence viewed in the light most favorable to the government was sufficient to permit submission of the case to the jury. *Conway,* 632 F.2d at 643; *Rhodes,* 631 F.2d at 45; *House,* 551 F.2d at 758; *Braverman,* 522 F.2d at 223.[1]

---

1. In an unpublished opinion, this court recently has also held that the error in reserving ruling on a Rule 29(a) motion for acquittal is harmless if at the close of the government's case the evidence viewed in the light most favorable to the government was sufficient to permit submission of the case to the jury. *United States v. Bailey,* [831 F.2d 297 (Table)] Nos. 85–4048,

■ In order to prove the existence of a conspiracy in violation of section 371, the evidence must establish an agreement between two or more persons to act together in committing an offense and an overt act in furtherance of the conspiracy. *United States v. Butler*, 618 F.2d 411, 414 (6th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980); *United States v. Richardson*, 596 F.2d 157, 162 (6th Cir.1978). A tacit or mutual understanding between or among the alleged conspirators is sufficient to show a conspiratorial agreement. *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir.1985). "A conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan." *Id.* Additionally, each overt act taken to effect the illegal purpose of the conspiracy need not be illegal in itself. *United States v. Van Hee*, 531 F.2d 352, 357 (6th Cir.1976).

■ In the instant case, at the close of the government's case in chief the evidence viewed in the light most favorable to the government was sufficient to permit submission of the case to the jury. The government's case in chief established that Reifsteck and Mr. Ludwig reached an agreement that Reifsteck would install listening devices in the conference room at the Baylis Company for $600. Reifsteck met with Mr. Ludwig and accepted $600 for the listening devices and their installation. Reifsteck required Mr. Ludwig to sign a piece of paper stating that he was not a member of a police agency. Reifsteck twice entered the premises of the Baylis Company where he installed one or more electronic devices designed to transmit or receive communications in a conference room. This evidence was sufficient to permit submission of the case to the jury.

Reifsteck argues, however, that he is not challenging the sufficiency of the evidence for the purpose of this issue. He argues instead that the district court's reservation of ruling on the Rule 29(a) motion adversely affected his right to a fair trial by removing his option not to take the stand. Appellant claims that facing only two charges, as he would have been if the district court would have acquitted the corporation at the close of the government's case in chief, he could have made his decision whether or not to testify free of the pressure of still facing four charges.

The option not to take the stand referred to by appellant is secured by the Fifth Amendment privilege against self-incrimination. The Supreme Court has established "that in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Garner v. United States*, 424 U.S. 648, 654, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370 (1976).

■ In the instant case, appellant has not convinced this court that the district court removed his option not to take the stand. Moreover, appellant did not claim the privilege against self-incrimination at the time he argues he was coerced into taking the witness stand. Therefore, we reject appellant's argument. Because, as we have held above, viewed in the light most favorable to the government, the evidence was sufficient to permit submission of the case to the jury at the close of the government's case in chief, the district court's error in reserving ruling on appellant's Rule 29(a) motion is harmless error.[2]

---

85–4055, 87–3225, slip op. at 21–22 (6th Cir. October 6, 1987) (unpublished).

**2.** At oral argument, appellant argued for the first time that because the district court granted Corporate & Domestic Investigations' Rule 29(a) motion at the close of all of the evidence, appellant's motion likewise should have been granted. Appellant's argument is not based on principles of collateral estoppel or res judicata. He argues instead that for the purpose of this case he and the corporation share a single identity, and that logic dictates that since the corporation was acquitted he should have been acquitted as well.

We reject this argument. We decline to pass judgment on the wisdom of the district court's granting of the corporation's Rule 29(a) motion. This ruling is not before us on appeal, and it is irrelevant to the resolution of the instant case. We note, however, that the district court's ruling appears to have been motivated by a belief that it was basically unfair to charge both appellant and his corporation with the same offense, not

Appellant next argues that the district court erred in refusing to admit the following proffered testimony of Tom Schenck:

[I]f Tom Schenck, S-c-h-e-n-c-k, were called to testify, he would testify that he in fact was the individual who previously purchased eavesdropping equipment from Mr. Reifsteck and that he was told at that time that Mr. Reifsteck does not install the equipment, and that he in fact did not discuss with Mr. Reifsteck the purpose for which he intended to purchase the equipment.

Appellant maintains that the district court erred in refusing the Schenck testimony because it is probative evidence on the issues of intent and guilty knowledge.

Federal Rule of Evidence 404(b) governs the admission into evidence of other acts. Rule 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Notes of Advisory Committee on Proposed Rules state:

No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403. Slough and Knightly, Other Vices, Other Crimes, 41 Iowa L.Rev. 325 (1956).

One treatise states that one interpretation of the term "other acts" in Rule 404(b) would include any conduct *good or bad* that tended to show the character of the person involved. 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5239 at 456 (1978) (emphasis added). Wigmore indicates that this interpretation is the majority view. 1A J. Wigmore, *Wigmore on Evidence* § 56.1 at 1176 (Tillers rev. 1983). Evidence of specific bad acts, however, is generally admissible under 404(b) for other purposes such as intent and knowledge. *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 404[12], 404[13] (1986). If any conduct good or bad is covered by Rule 404(b)'s prohibition, then since the language of exception in Rule 404(b), i.e., the second sentence, is not qualified it would seem reasonable to conclude that Rule 404(b)'s exceptions also apply to any conduct good or bad. This conclusion is supported by Wigmore: "Moreover, there are other principles by which a defendant may occasionally avail himself of conduct as evidence in his favor—in particular, of conduct indicating consciousness of innocence ... of utterances asserting his innocence ... and, in sedition charges, of conduct indicating a loyal state of mind...." 1A J. Wigmore, *Wigmore on Evidence* § 56.1 at 1180 (Tillers rev. 1983). We need not, however, decide this question.

 Regardless of whether the proffered testimony properly could have been admitted, the district court did not commit reversible error in refusing the testimony. For denial of a defendant's proffered testimony to constitute reversible error, the testimony must establish a reasonable doubt about guilt in light of the record in the case. *See Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 509, 98 L.Ed.2d 507 (1987). "The denial of the testimony must constitute such an 'absence of ... fairness' that it 'fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" *Id.* (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982)). In the instant case, the denial of the proffered testimony was not fundamentally unfair. The proffered evidence is substantially similar to the evidence which was admitted at trial. At trial, Reifsteck testified that he sold equipment to Schenck, that Reifsteck was not asked to install the equipment, and that Reifsteck was not told how Schenck intended to use the equipment. Reifsteck and Henry Middendorf, a person who was

---

by a belief that the evidence was insufficient to convict the corporation.

present during a meeting of Reifsteck and Mr. Ludwig, both testified that Reifsteck told Mr. Ludwig that he would not install the devices and that Reifsteck told Mr. Ludwig that Reifsteck did not want to know why Mr. Ludwig wanted the devices. Reifsteck also testified that he did not install the devices purchased by the Ludwigs, and that he did not know for what purpose the Ludwigs intended to use the devices. Thus, the proffered testimony is merely cumulative. For this reason, the refusal to admit the proffered testimony was at most harmless error.[3]

For the foregoing reasons, the district court's judgment is AFFIRMED.

**Glen CREECH, Petitioner,**

v.

**BENEFITS REVIEW BOARD,
Respondent.**

**No. 85–3895.**

United States Court of Appeals,
Sixth Circuit.

Submitted Feb. 5, 1988.

Decided March 15, 1988.

Glen Creech, pro se.

John Kevin West (pro bono), McCoy, Baker & Newcomer, Lexington, Ky., for petitioner.

J. Michael O'Neill, Brian E. Peters, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for respondent.

_____

**3.** In light of our disposition of Reifsteck's first two arguments, which includes a holding that viewed in the light most favorable to the government the evidence was sufficient to convict Reifsteck, we do not address appellant's third argument which challenges the sufficiency of the evidence. *See Glasser v. United States,* 315

Before JONES and MILBURN, Circuit Judges; and JOINER, Senior District Judge *.

U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).