996 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Edward CONNELLY, Defendant-Appellant.
 No. 92-2214.
 United States Court of Appeals, Sixth Circuit.
 June 17, 1993.
 
 Before GUY and BATCHELDER, Circuit Judges, and MILES, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant, James E. Connelly, appeals his conviction for armed bank robbery, use of a firearm during and in relation to a crime of violence, and possession of ammunition by a felon. The single issue on appeal is whether the trial court abused its discretion by excluding identification testimony of defense witnesses not present at the bank robbery who were prepared to testify that they had seen individuals that matched the description of the bank robber. We find no abuse of discretion, and affirm.
 
 I.
 
 2
 On August 17, 1990, a man entered a Flint, Michigan, bank and told the head teller he wanted to see "Roberta" about a painting. The teller pointed him to Roberta Schmiediknecht, the bank's branch manager. After Schmiediknecht insisted that no painting existed, the man pulled his shirt back to reveal a gun. The man then started to question her about how to open the vault. Schmiediknecht and the head teller opened the vault and put almost $1,500 into a bag supplied by the robber. Schmiediknecht was then ordered to the front of the bank to remove cash from drawers in each teller's cage. As she did this, she managed to slip some dye packs into the bundles of cash and at the last teller window she set off an alarm. Just as the robber got to the trunk of his car outside of the bank, the dye packs exploded, sending up red smoke. A few seconds later the robber fired two shots directly into the bank. He then drove off in a small brown car.
 
 
 3
 The FBI agent assigned to the case thought initially that the robber might have been James Connelly, based upon information available to him. The agent contacted an acquaintance of Connelly's, Curtis Langston, who informed the agent that he had seen Connelly with dye-stained money in the trunk of a car after the robbery. Langston also said that Connelly had fled the state. Connelly was arrested almost a year later in Florida. He had shaved the beard he wore during the robbery. He was also in possession of a 9mm round, the same caliber as the casings found at the robbery after the robber shot into the bank.
 
 
 4
 Connelly was charged on one count of armed bank robbery pursuant to 18 U.S.C. §§ 2113(a) and (d), one count of using a firearm during a crime of violence pursuant to 18 U.S.C. § 924(c), and one count of illegally possessing ammunition after having been convicted of a felony pursuant to 18 U.S.C. § 922(g) and § 924(e). Connelly had seven prior violent felony convictions, including armed robbery. At trial, Schmiediknecht, the head teller, another teller, and a customer all identified Connelly as the bank robber. He was found guilty on all counts.
 
 II.
 
 5
 On appeal, defendant contests the trial court's decision to preclude the identification testimony of three defense witnesses. These witnesses were willing to testify that they had seen people in the Flint area who resembled pictures of the defendant displayed on television and in newspapers. The government responds that the trial court not only did not abuse its discretion, but also ruled correctly in denying the proffered evidence.
 
 
 6
 On the first day of trial, the government moved to preclude defense counsel from telling the jury in his opening statement that he planned to present certain "identification" testimony. Defense counsel then informed the court that he intended to call as many as three different people who were not present during the robbery but who had seen a bank surveillance camera photograph of the robber on television or in the newspaper the day after the robbery. These people reported to bank security officers that they had seen a man who resembled the photos of the bank robber.
 
 
 7
 Defendant's picture apparently bore a likeness to the singer Kenny Rogers. Counsel explained that he wanted to argue to the jury "to be very critical of the mere fact that [just because] someone looks like Kenny Rogers ... he's the bank robber." (App. 37). The district court denied the admission of the evidence, ruling:
 
 
 8
 I'll grant the motion in limine and allow you [defense counsel] to give me some law that shows that you are entitled to have it in. The fact that there may be other people who fit the description, the general description of looking like Kenny Rogers, does not--does not make it admissible.
 
 
 9
 Everybody knows that a description ["]looks like Kenny Rogers["] is a generic description. I'll bar it. I'll reconsider in the event you want to give me some law that says that you are entitled to do it in that fashion.
 
 
 10
 (App. 38).
 
 
 11
 The trial court did not err in barring this proposed testimony. The proffered testimony would have come from persons not even present at the robbery and who would have based their testimony on pictures reproduced from bank surveillance camera photographs. These photos often do not capture a complete, clear view of the suspect. In addition, the testimony was offered to establish simply that more than one person in the Flint area around the time of the robbery resembled singer Kenny Rogers. This fact, if proven, would have added little to the question of whether the four eyewitnesses to the crime correctly identified Connelly as the robber. Defense counsel had adequate opportunity to examine those who did identify Connelly as the robber, and we are therefore convinced that the trial court did not abuse its discretion in controlling the presentation of evidence. United States v. Terry, 729 F.2d 1063, 1067 (6th Cir.1984) (trial judges accorded considerable discretion in controlling the presentation or exclusion of evidence).
 
 
 12
 Moreover, as the government has observed correctly, "[f]or denial of a defendant's proffered testimony to constitute reversible error, the testimony must establish a reasonable doubt about guilt in light of the record in the case." United States v. Reifsteck, 841 F.2d 701, 705 (6th Cir.1988). In this case, four eyewitnesses to the robbery identified Connelly as the robber, Connelly's acquaintance Langston testified to his knowledge of the events, the jury heard about the recovery of the getaway car, and evidence was introduced about the presence of dye stains matching the bank's dye packs in the car Connelly drove. In all, it cannot be said that the admission of the testimony sought by defendant would have established a reasonable doubt as to his guilt.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, United States District Court for the Western District of Michigan, sitting by designation