37 F.3d 1500
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby McGORY, Defendant-Appellant.
 No. 93-6644.
 United States Court of Appeals, Sixth Circuit.
 Oct. 13, 1994.
 
 Before: JONES and BATCHELDER, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Bobby McGory appeals his conviction for conspiracy to possess with intent to distribute cocaine. For the reasons stated herein, we affirm McGory's conviction.
 
 I.
 
 2
 Tommy Long, a resident of Limestone County, Alabama, and the government informant in the instant case, contacted Alabama Deputy Sheriff Charles Dansby on February 10, 1992. Long told Dansby that he had information that Appellant McGory was interested in purchasing substantial quantities of cocaine. Long and Dansby then entered into an arrangement whereby Long would receive 25% of all currency seized in the course a subsequent investigation of McGory. The investigation was then commenced.
 
 
 3
 Dansby and Long called McGory and arranged to meet him on February 21, 1994, at a local restaurant in Red Bay, Alabama. Dansby attended the meeting accompanied by Agent Andy Hardy and Tommy Long. McGory was accompanied by co-defendant Alvin Gray. Dansby, Hardy and McGory stepped outside of the restaurant to discuss the drug deal. Gray was subsequently summoned to join the group. During the negotiations the word "cars" was allegedly used as a code name for a kilogram of cocaine. However, no firm deal was made as a result of the negotiations. The investigation of McGory and Gray was subsequently terminated after Deputy Sheriff Dansby determined that a deal with the two was not imminent.
 
 
 4
 On March 31, 1992, following the termination of the initial investigation, DEA and Memphis Police Department agents contacted Dansby and informed him that Gray was being investigated on an unrelated matter. They requested that Dansby reestablish contact with Gray and attempt to engage him in a deal. Dansby directed Long to contact Gray on behalf of the Memphis authorities. Long then, without Dansby's knowledge or consent, proceeded to record several conversations between Gray, McGory, and himself, during April 1992.
 
 
 5
 On October 22, 1992, Bobby McGory and co-defendant Alvin Gray were indicted by a federal grand jury. The indictment charged McGory and Gray with unlawfully, knowingly, and intentionally conspiring to possess with intent to distribute cocaine. This indictment arose out of the initial investigation conducted by Officer Dansby.
 
 
 6
 On April 30, 1993, Gray entered into a plea agreement with the government, pursuant to which Gray agreed to testify against McGory. In return, the government offered to seek a 5K1.1 motion for reduction of sentence if it determined that Gray had rendered substantial assistance.
 
 
 7
 On June 9, 1993, McGory was brought to trial. This initial trial was concluded on June 14, 1993, following the jury's declaration that it was hopelessly deadlocked. An order of mistrial was entered on June 16, 1993.
 
 
 8
 On August 5, 1993, McGory's second trial was commenced. The jury found McGory guilty as charged, and McGory was sentenced to 6 1/2 years incarceration, plus four years supervised release. This appeal followed.
 
 II.
 A.
 
 9
 On appeal, McGory first claims that the district court erred by excluding the April 1992 conversations that Tommy Long recorded between himself (Long), Gray, and McGory. McGory contends that these conversations contained probative evidence regarding his unwillingness to join in the cocaine-purchasing conspiracy for which he was indicted.
 
 
 10
 We review the trial court's evidentiary rulings for an abuse of discretion. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). "However, a district court's conclusions of law, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed de novo." Id. An abuse of discretion will be found if the reviewing court is left with the firm conviction that a mistake has been made. In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989).
 
 
 11
 In the context of the exclusion of evidence, we have stated, that "[f]or [the] denial of a defendant's proffered testimony to constitute reversible error, the testimony must establish a reasonable doubt about guilt in light of the record in the case." United States v. Reifsteck, 841 F.2d 701, 705 (6th Cir.1988) (emphasis added). The Reifsteck court found that the failure to admit evidence there did not constitute reversible error where the evidence was substantially similar to other evidence that had been admitted. The court thus found that the "refusal to admit the proffered testimony was at most harmless error." Id. at 706. See also United States v. Holloway, 740 F.2d 1373, 1379 (6th Cir.) (holding that "errors in the exclusion of evidence may be cured by the admission of other evidence of substantially the same nature."), cert. denied, 469 U.S. 1021 (1984).
 
 
 12
 In Crane v. Sowders, 889 F.2d 715 (6th Cir.1989), cert. denied, 493 U.S. 1094 (1990), we once again considered the exclusion of a defendant's proffered evidence. In Crane, the trial court had excluded evidence detailing the conditions under which the defendant had confessed to various crimes. We concluded that this exclusion constituted reversible error. "Considering the importance of Crane's confession to the State's case, the exclusion of evidence bearing on its credibility violates principles of procedural fairness." Id. at 718. The court went on to state that "the noncumulative nature of the excluded evidence and the weakness of the prosecution's case when considered in light of the evidence of the unreliability of Crane's confession mandate that the error was not harmless." Id. See also United States v. Popenas, 780 F.2d 545, 548 (6th Cir.1985) (finding that the exclusion of the defendant's proffered evidence was erroneous where the affidavit was "directly relevant to a necessary element of the violation.").
 
 
 13
 In the instant case, McGory offered several taped conversations between himself and Long.[1] In these conversations, McGory evidences an unwillingness to participate in any scheme with Long. The trial court excluded this offered testimony based upon its conclusion that the testimony was temporally unrelated to the conspiracy charge for which McGory was being tried. J.A. at 309.[2] The government similarly argues that the statements should be excluded because they relate to the investigation conducted by the Memphis Police Department, and not to the investigation which resulted in McGory's indictment in the instant case. See Government's Br. at 20 ("[T]he taped conversations verified Dansby and Long's assertions that these tapes were made during a subsequent investigation initiated at the request of a different investigative agency.").
 
 
 14
 Viewing McGory's claim in light of the applicable case law, we conclude that the excluded evidence does not "establish a reasonable doubt about [McGory's] guilt in light of the record in the case." Reifsteck, 841 F.2d at 705. Unlike in the Crane case, the government here presented sufficient evidence upon which a finding of guilt might be sustained. Moreover, the statements which McGory sought to admit were made several months after the conclusion of the federal investigation, and after Long had informed Gray that a new supplier was being used. See J.A. at 266, 272. Thus, arguably, the statements were not "directly relevant to a necessary element of the violation." Popenas, 780 F.2d at 548. Because we are not left with a "firm conviction that a mistake has been made," In re Bendectin Litigation, 857 F.2d at 307, we affirm the district court's refusal to admit the tapes.
 
 B.
 
 15
 McGory next asserts that the district court should have allowed his proffered jury instruction on the defense of withdrawal. In reviewing the trial court's refusal to issue requested jury instructions, we must determine "whether the charge taken as a whole, fairly and adequately submits the issues and applicable law to the jury." United States v. Lee, 991 F.2d 343, 350 (6th Cir.1993) (quoting United States v. Buckley, 934 F.2d 84, 87 (6th Cir.1991). Reversible error will be committed only if the proposed instruction 1) is a correct statement of the law; 2) is not substantially covered by the instruction actually given; and 3) pertains to an issue of critical importance to the defense. United States v. Williams, 952 F.2d 1504, 1512 (6th Cir.1991). Moreover, "when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions. Even when the supporting evidence is weak or of doubtful credibility its presence requires an instruction on the theory of defense." United States v. Garner, 529 F.2d 962, 970 (6th Cir.), cert. denied, 429 U.S. 850 (1976).
 
 
 16
 In the instant case, McGory asked the court to instruct the jury that "withdrawal was a defense, or alternatively, that withdrawal was a defense before any affirmative act was committed." McGory Br. at 23. The trial court rejected McGory's request, finding that withdrawal was not a defense to the crime charged. See Tr. at 854.
 
 
 17
 Contrary to the trial court's ruling, withdrawal is a defense to a conspiracy charge. United States v. Chambers, 944 F.2d 1253, 1265 (6th Cir.1991) (finding that "[w]ithdrawal from a conspiracy is an affirmative defense."), cert. denied, 112 S.Ct. 1217 (1992). However, although McGory's proffered instruction finds support in the law, in light of our above conclusion, see supra, section II.A., he failed to produce any factual evidence that would necessitate the requested instruction. This court has found that
 
 
 18
 [m]ere cessation of activity in furtherance of an illegal conspiracy does not necessarily constitute withdrawal. The defendant must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals.
 
 
 19
 Chambers, 944 F.2d at 1265. See also United States v. Steele, 685 F.2d 793, 803-04 (3rd Cir.), cert. denied, 459 U.S. 908 (1982). Thus, where McGory presented no evidence that would tend to show he communicated his withdrawal to either the authorities or his co-conspirators, the court did not commit reversible error by refusing to issue the proposed instruction.
 
 C.
 
 20
 McGory also alleges that the district court erred in refusing to issue his requested instruction on entrapment. An effective defense of entrapment will be available to the defendant if he has presented some evidence that will tend to show "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States, 485 U.S. 58, 63 (1988). See also United States v. Nelson, 922 F.2d 311, 317 (6th Cir.1990), cert. denied, 499 U.S. 981 (1991). Furthermore, "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." Mathews, 485 U.S. at 62.
 
 
 21
 In the instant case, McGory denied that he was involved in negotiations to deal drugs. Nevertheless, he maintains that his involvement was the result of governmental inducement. Thus, as per Mathews, although McGory denies actual involvement in the crime, he will still be entitled to an instruction on the entrapment defense if he produced evidence sufficient to satisfy the elements of the defense.
 
 
 22
 McGory presented evidence that might tend to establish the first element of the entrapment defense--a lack of criminal predisposition on his part. For example, McGory testified that he and his wife, to whom he had been married for twenty-one years, ran a family restaurant which was quite successful. In addition, McGory worked 45 to 50 hours a week driving a truck, and spent his spare time farming a 150-acre farm that had been inherited by his wife. The Chief of Police in Okolona, Mississippi, a town near McGory's residence, testified that he had known McGory for nineteen or twenty years, and believed McGory to be an honest and law-abiding citizen. A second Okolona police officer, Tommy Bowens, also testified that he had known McGory for over twenty years. Bowens asserted that "Bobby [McGory] always has been honest. We have never had any problems with Bobby at all." J.A. at 243. However, in order to be entitled to an entrapment instruction, McGory was also required to present evidence that his involvement was induced by the government. McGory has failed to fulfill this requirement.
 
 
 23
 This circuit has found that the elements of an entrapment defense are not satisfied simply by showing the government created the opportunity for the defendant to commit a crime. Nelson, 922 F.2d at 317 ("Simply stated, the government agents did not entrap Nelson by merely presenting him the opportunity to sell the cocaine that he possessed."). Accordingly, where the only evidence presented by McGory on the issue of inducement was that he was contacted by government agent Tommy Long to schedule the initial meeting, McGory has not satisfied his burden. Because McGory did not present evidence sufficient to support a defense of entrapment, the trial court did not err by refusing to issue an instruction on the same.
 
 D.
 
 24
 McGory next asserts that his right to a speedy trial was violated. The trial court's factual determinations regarding an alleged violation of the Speedy Trial Act are reviewed for clear error. United States v. Carroll, No. 93-5030, Slip Opinion at 21 (June 22, 1994). Legal determinations regarding such a violation are reviewed de novo. Id.
 
 
 25
 McGory entered an initial appearance on November 2, 1992. McGory's trial was then not commenced until May 11, 1993. Much of this delay was attributable to numerous continuances requested by McGory's co-defendant Alvin Gray.
 
 
 26
 The Speedy Trial Act commands that a defendant's trial commence within seventy days of his initial appearance. See 18 U.S.C. Sec. 3161(c)(1) ("In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from ... the date the defendant has appeared before a judicial officer."). In calculating the number of days between the initial appearance and the trial the statute instructs that certain days are to be excluded from the total. Such excludable days include "reasonable period[s] of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." See 18 U.S.C. Sec. 3161(h)(7). Finally, the statute declares that "[f]ailure of the defendant to move for dismissal prior to trial ... shall constitute a waiver of the right to dismissal under this section." See 18 U.S.C. Sec. 3162(a)(2).
 
 
 27
 The government contends that McGory has waived his right to assert a Speedy Trial Act violation based upon his failure to make a motion to dismiss prior to trial. See Government Br. at 26. McGory counters that the grounds for his Speedy Trial Act claim were not made known to him until after his second trial had commenced. See McGory Br. at 32.
 
 
 28
 The delay in the commencement of McGory's first trial was caused by several continuances that were requested by McGory's co-defendant, Alvin Gray. McGory alleges that unbeknownst to him, Gray began working with the government in July 1992, prior to trial. Thus, McGory asserts that where "Gray was a government witness, and ... did not really need time to prepare for trial ... there was no legitimate continuance being requested by Gray." McGory Reply Br. at 8. In support of his assertion that Gray was a government agent, McGory directs our attention to a forty-six page statement that Gray gave to law enforcement officers in July 1992. The government did not notify McGory of the existence of this statement, and McGory learned of the statement only by chance during the second trial.
 
 
 29
 McGory correctly asserts that Gray filed a forty-six page statement with law enforcement in July 1992. See Tr. at 518. However, this statement did not mention McGory or any dealings with him, see Tr. at 524, and McGory has presented no other evidence to indicate that Gray engaged in cooperation with the government in the instant case. Consequently, McGory's duty to file a motion to dismiss prior to trial was not excused by any governmental misconduct. We find that McGory's failure to file a motion to dismiss prior to trial thus constitutes a waiver of his claim. See 18 U.S.C. Sec. 3162(a)(2).
 
 E.
 
 30
 McGory's fifth claim is that the trial court erred by allowing Officer Dansby to testify as to his understanding of the term "cars," as used by McGory during their negotiations.[3] McGory's position is directly refuted by our holding in United States v. Graham, 856 F.2d 756 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989).
 
 
 31
 In Graham, we found that "[a] government agent may, like any other witness, testify in the form of an opinion as to his understanding of a defendant's statement." Id. at 759. Consequently, the admission of Officer Dansby's testimony in the instant case was not an abuse of the trial court's discretion.
 
 F.
 
 32
 McGory's final argument is that the trial court erred by excluding proposed evidence which described an earlier instance where Long falsely accused a law enforcement officer of dealing drugs. The trial court excluded the evidence, finding that if the defense wished to attack Long's credibility it should do so with opinion or reputation testimony, and not with testimony of specific conduct. See Tr. at 571-74. The trial court's ruling is supported both by the Federal Rules of Evidence, and binding precedent in this circuit.
 
 
 33
 Rule 608(b) of the Federal Rules of Evidence states that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." Applying this rule to the instant case, we find that McGory's proffered evidence was properly excluded, for it constituted extrinsic evidence of specific conduct by Long which was intended to undermine Long's credibility. See also United States v. Meyer, 803 F.2d 246, 149 (6th Cir.1986) (applying rule 608(b) and concluding that testimony regarding the government informant's prior entrapment of four individuals was properly excluded), cert. denied, 480 U.S. 936 (1987).
 
 III.
 
 34
 For the foregoing reasons, we affirm McGory's conviction.
 
 
 
 *
 The Honorable Joseph M. Hood, District Court Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 In the first conversation, recorded on April 10, 1992, McGory indicated to Tommy Long that he was not interested in getting involved with Long's operation:
 [Long:] Did you talk to Mike after I talked to him yesterday?
 [McCory:] No.
 [Long:] He told me to call....
 [McGory:] Well, like I told him, you know, I didn't want to get involved in that. You know, I'm working in this little place here keeping up, real busy with a little income.
 [Long:] How is your little business doing?
 [McGory:] I'm fixin' to add on to it, fixin' to stretch it out?
 * * *
 [Long:] Oh yeah? ...
 [McGory:] And like I told him, I said I just didn't have time to do anything else, you know.
 J.A. at 61-62 (emphasis added).
 In a subsequent conversation between Long and McGory, McGory once again made plain his desire to remain uninvolved:
 [McGory:] That's right. I told him I didn't want to get into it.
 [Long:] You had told me plain that was it.
 [McGory:] Yeah.
 [Long:] ... I said [to Alvin Gray] I'm leaving, I'm making the final offer. I said that's it. And, what I want to know is he keeps telling me that it's always been that you made the initiative.
 [McGory:] No, like I told him, I wasn't into that and I'm real busy here with this restaurant, and I said somebody else could handle it.
 [Long:] I can't hardly hear you Bobby.
 [McGory:] I said, you know, I told him that we're real busy with this restaurant where the house is and I told him, you know, I wasn't into that, you know and I think I might have told you that, too.
 [Long:] Yeah, that's exactly what you said.
 [McGory:] Allright [sic] now, I said whatever you did bring down I wouldn't have anything to do with it, you know.
 J.A. at 75 (emphasis added).
 
 
 [2]
 The court further concluded that the tapes should be excluded because they were "self-serving." See J.A. at 310. As McGory correctly notes, the Federal Rules of Evidence do not require that evidence be excluded simply because it is self-serving. Cf. Fed.R.Evid. 803 advisory committee's note ("[T]hat records might be self-serving has not been a ground for exclusion.")
 
 
 [3]
 At trial, Officer Dansby testified that he believed McGory was referring to cocaine when he inquired about "clean cars:"
 Q. What did you understand him to mean by the clean cars?
 A. By the clean cars?
 Q. That's correct.
 A. It was my understanding that we were talking about when he said, cars, what he meant was a kilo of cocaine.
 * * *
 A.... my understanding, he's telling me there again they're going to be buying a lot of cars, a lot of dope from us. And they don't have to--they don't want to have to worry about that dope every time. He's trying to get reassurance me from [sic] that it's going to be the same dope every time, that we're not going to come in there and step on it and, you know, what he agrees to buy is what he gets.
 J.A. at 103-05.