MERRITT, Circuit Judge,
concurring in part and dissenting in part.
Four government witnesses were allowed, over the objection of the defendant, Geisen, to testify in great detail about their negotiations with the government to escape prosecution while Geisen was denied the right to testify about his response to the government’s offer of the same deal. The court’s rulings seem contrary to a number of principles of relevancy usually observed in criminal trials: Rule 401 of the Federal Rules of Evidence provides a broad and inclusive definition of “relevant evidence.”[1] Rule 408 allowing “offers to compromise” in criminal cases would appear to allow evidence of the government offer and Geisen’s response.[2] When a party “opens the door” by offering proof concerning offers of compromise, the opposing party should be allowed the same opportunity in reply. For a long discussion of this relevancy concept on “curative admissibility,” see 1 Wigmore, Evidence § 15, pp. 731-51 (Tillers Revision 1983). The failure to offer the same opportunity in response to similar circumstances comes close to a deprivation of a trial right protected by *498 due process to “question and challenge adverse evidence.” Id. at § 7. 1, n. 64, p. 505. Although I do not object to the court’s decision in this case on the sufficiency of the evidence, I would reverse and remand for a new trial because the trial court rejected important evidence offered by Geisen. Had the jury known that Geisen had been offered the same deal offered to the government’s four witnesses, one or more jurors may have believed that Geisen was no more guilty than the witnesses who were spared prosecution and may have believed that his decision was based on a firm belief in his own innocence.
Twice at trial Geisen moved to enter into evidence (1) that the government offered him a deferred prosecution agreement; and (2) that he rejected it. Geisen first moved to introduce this evidence before trial. The trial judge deferred ruling on the motion. During the government’s case in chief, the government introduced, over objection, evidence that four of its own witnesses — Miller, Goyal, Moffitt, and Wuokko — had engaged in charging negotiations with prosecutors. Geisen then moved again to have evidence of his own charging negotiations entered, and the court denied the motion. The majority’s opinion gives short shrift to the issue and fails to explain the ramifications of the trial judge’s decision to permit the jury to learn of the existence of charging negotiations through government witnesses, while preventing the jury from hearing that Geisen was offered one as well.
The evidence of Geisen’s rejection of the government’s offer of delayed prosecution raises two evidentiary inferences that should be admissible under the broad definition of “relevant evidence” in Section 401 of the Federal Rules. First is the inference that Geisen argued in his pretrial motion: his rejection of the offer shows “consciousness of innocence” because a jury could fairly infer that an innocent person was more likely to reject this conditional dismissal of all charges than a guilty person. United States v. Reifsteck, 841 F.2d 701, 705 (6th Cir.1988). Dean Wig-more says the evidence should be admissible on this basis alone.[3]
The second inference that a jury might make from Geisen’s submitted evidence is drawn not from his rejection of the deal, but from the fact that it was offered to him by the government. The offering of the *499 deal raises an inference that Geisen was of no greater culpability than the four witnesses, and hence had not been singled out as more guilty than the others whom the government has let go. Through these witnesses the jury learned that the prosecution divided the employees of the plant into “targets” and “subjects” and that one could change from a target to a subject through a proffer.[4] In the circumstances of this case, the problem is not only that the jury was unable to make the second inference, but also that the jury may in fact have been led to infer just the opposite: that, unlike the four witnesses, Geisen was not offered a deal because he was more culpable. The exclusion of Geisen’s evidence may have left jurors with the erroneous impression that Geisen was more culpable and less entitled to leniency than other employees.
The government proved in its case in chief that other employees had plea bargained their way out of prosecution and that the government’s course of conduct with these witnesses was reasonable, but this proof left the jury with the strong impression — absent any other explanation — that Geisen’s guilt was in another class. This appearance of more culpability is at least reasonably debatable. What is good for the government’s side of the case should also be good for the defendant’s side. I know of no basis to make a distinction as to admissibility between acceptance of the government’s offer and rejection of the offer. The only reason given by the District Court was that allowing the evidence would delay the trial and cause the parties and the jury to focus on peripheral matters.[5] Principles of reciprocity and equal treatment under law, along with nor *500 mal rules of relevancy, would seem to me more important in any weighing process than the extra time and added complications in the trial that the evidence might cause.

. Rule 401. Definition of "relevant evidence."
"Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

. Rule 408. Compromise and offers to compromise.
(a) Prohibited uses. — Evidence of the following is not admissible on behalf of any party....:
(2) Conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
(Emphasis added.)

. § 293. Conduct, as evidence of Consciousness of Innocence (Accused's Voluntary Surrender, Refusal to Escape, Demeanor, etc.). If guilt leaves the psychological mark which we term "consciousness of guilt”, and if this is available as evidence (ante, § 273), then the absence of that mark (which for want of a better term may be spoken of as "consciousness of innocence”) is some indication of the absence of guilt, i.e., of not having done the deed charged. No Court seems to repudiate this proposition (ante, § 174); but the tendency to reject evidence of a consciousness of innocence is rather due to a distrust of the inference from conduct to that consciousness, since the conduct is often feigned and artificial.
Such distrust, however, seems improper. Certainty in the inferences of ordinary life we attach as much weight to that inference as to the inference of consciousness of guilt; the hearing of one accused person as consciously innocent impresses us no less strikingly than the hearing of another as consciously guilty.... Let the accused’s whole conduct come in; and whether it tells for consciousness of guilt or for consciousness of innocence, let us take it for what it is worth, remembering that in either case it is open to varying explanations and is not to be emphasized. Let us not deprive an innocent person, falsely accused, of the inference which common sense draws from a consciousness of innocence and its natural manifestations. With singular perversity, however, several Courts profess to refuse to allow conduct to be considered for the purpose of drawing an inference of consciousness of innocence; but one consequence of this is the frequent occurrence of inconsistent rulings by the same Court.
2 Wigmore, Evidence § 293 at 189-90.

. For example, during the direct examination of government witness Moffitt, the following exchange took place:
Q: Did you have contact with the prosecutors in this case []?
A. Yes.
Q. What was that contact?
A. Well, I was a target of the investigation, so I certainly had contact from that perspective ...
Q. What did you understand it meant to be the target of the investigation?
A. Target of investigation meant, like, target of hunting. There was cross-hairs, and I was likely to be indicted for potentially could be indicted on this.
Q. [W]ere there conditions with respect to the meeting about how things that you told the prosecutors could be used?
A. I think I met at least twice in 2005, if I remember, and there was something called a proffer that was^ — I signed, either I or my attorney signed.
Q. And subsequent to that meeting, did the government indicate to you that your status had changed?
A. Yes. Yes.
Q. What was your status at that point?
A. I was a subject of the investigation instead of a target. I certainly felt relieved at that point.
(TT of Moffitt, RE No. 259; ROA pp. 112-114.)

. THE COURT: I had said at our pretrial conference that with respect to that motion, I had tentatively reached the conclusion to deny it. At that time, I indicated that it is my opinion there were far too many factors and variables.... Whatever it may be, it would seem to me that there are more reasons to keep it out than to permit it to come in. And those reasons are that we then open the door to cross examination on what he was told by his counsel; and therefore, what he understood a deferred prosecution agreement to mean for him, and what else was involved in his consideration, including his position for future employment in the nuclear industry and other employment....
There are too many variable like probability or possibility of winning, the length or type of sentence he was facing against the possibility or probability of winning through a not guilty verdict. There are just too many variables other than the explanation which would be permitted to the defendants on closing argument that that represented his denial of guilt. I will not permit it and I will deny the motion.