UNITED STATES of America, Plaintiff,

v.

Marvin BERKOWITZ, Defendant.

No. 88 CR 873.

United States District Court,
N.D. Illinois, E.D.

May 26, 1989.

Anton R. Valukas, U.S. Atty. by Jacquelin Stern and Ted S. Helwig, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

William T. Huyck, Robert E. Gordon, Gordon & Gordon, Ltd., Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

On January 9, 1989, the jury in this case found defendant Marvin Berkowitz guilty on all charges contained in the indictment. The court must now sentence Berkowitz for the crimes of which he has been convicted. As a basis for Berkowitz's sentence, the court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. *Personal Background*

Berkowitz was born on March 4, 1947, in Munich, Germany. Shortly thereafter, he moved with his parents to San Francisco, where he spent his formative years and attended high school. After graduating from the University of California at Berkeley, Berkowitz attended the Ner Israel Rabbinical College located in Baltimore, where he studied but did not receive a degree.

In January 1971, he married his wife, Rena Berkowitz (nee Weil), in Chicago. He took a job at the Loop Synagogue in Chicago, where he worked for five years managing the synagogue's daily affairs. Berkowitz left his employment at the synagogue in 1976. Since then, he has been self-employed as a real estate and equipment leasing specialist. Mrs. Berkowitz is employed as a food service supervisor at a nursing home. The Berkowitzes have five children, whose ages range from six to sixteen.

Berkowitz faithfully practices the Orthodox Jewish religion. He is physically fit. In addition, he has never sought or received the help of a psychiatrist or other mental health professional. He is a social drinker who has never abused alcohol or drugs to excess. He has no juvenile record. However, he was charged with uttering a forged document in Crown Point, Indiana, in 1977. In addition, on April 13, 1988, he was indicted on mail fraud and tax fraud charges by a federal grand jury in the Northern District of Illinois. Those charges are still pending before Judge Marshall.

### B. *Charges and Conviction*

The indictment alleged that Berkowitz stole and destroyed certain government tax documents which he knew were material to the prosecution of the mail fraud and tax fraud charges pending against him. According to the indictment, Berkowitz stole the documents from the United States Attorney's Office while conducting discovery concerning the fraud charges on which he had previously been indicted. At the time, he was out on bond. Count I of the indictment alleged that Berkowitz obstructed justice, in violation of 18 U.S.C. § 1503, by stealing the documents. Count II charged Berkowitz with further obstructing justice, in violation of 18 U.S.C. § 1503, by destroying some of the documents. Count III charged Berkowitz with stealing property of the United States in violation of 18 U.S.C. § 641.

Berkowitz pled not guilty to all three counts and demanded a jury trial. During the trial, which lasted five days, the government presented evidence which showed that Berkowitz had the motive, opportunity, and ability to steal the documents. The evidence also showed that Berkowitz had many of the documents in his possession when he was arrested at his home on November 7, 1988. After hearing the evidence, the jury convicted Berkowitz on all charges.

## II. CONCLUSIONS OF LAW

### A. *Application of the Federal Sentencing Guidelines*

Since the offenses Berkowitz committed occurred after November 1, 1987, the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.* (1982 ed., Supp. IV) and 28 U.S.C. §§ 991–998 (1982 ed., Supp. IV), is applicable. Therefore, Berkowitz must be sentenced pursuant to the federal sentencing guidelines, which the Supreme Court held constitutional in *Mistretta v. U.S.*, ___ U.S. ___, 109 S.Ct. 647, 102 L.Ed. 2d 714 (1989). Pursuant to the guidelines, two factors essentially determine the applicable sentencing range in a particular case: the "total offense level" and the defendant's "criminal history category." *See*

§ 1B1.1(g) of the United States Sentencing Commission Guidelines Manual. (All references hereinafter are to the Manual.) After making these two determinations, the court simply refers to the sentencing table contained in the guidelines for the applicable sentencing range.

The guidelines provide a step-by-step procedure which this court will follow in determining Berkowitz's total offense level. First, the court will determine the adjusted offense level of each charge in the indictment. § 1B1.1(a)–(d). The court will then calculate the combined offense level by considering the aggregate effect of the multiple charges. § 1B1.1(d). Finally, the court will determine the total offense level by deciding whether Berkowitz has accepted responsibility for the offenses. § 1B1.1(e). Once the total offense level is established, the court will then determine the defendant's criminal history category, apply the sentencing table, and select the appropriate sentence. § 1B1.1(f), (g).

### 1. The Offense Level For Each Charge

#### a. *Counts I and II*

Under the guidelines, the base offense level for obstruction of justice is 12. § 2J1.2(a). The offense level is increased by 8 levels where, as here, the defendant has obstructed the administration of justice by causing physical injury to property. § 2J1.2(b)(1). In addition, the offense level is increased by 2 levels where the defendant willfully impedes the administration of justice during the investigation or prosecution of the offense with which he is charged. § 3C1.1. In the instant case, the court finds that Berkowitz impeded the administration of justice by committing perjury at his trial. Therefore, Berkowitz must receive the offense level adjustment provided for in § 3C1.1, which raises the adjusted offense level for Counts I and II to 22.

 government argues that the offense level should be further increased, pursuant to § 3B1.3, because Berkowitz abused a position of "private trust." The court finds, however, that Berkowitz did not abuse any position of trust. He simply took advantage of an opportunity. There-

fore, an increase pursuant to § 3B1.3 is not warranted.

 The government also claims that the court should apply § 2X3.1, which results in a higher offense level for Counts I and II. Section 2X3.1, however, is inapplicable. That section is entitled, "Accessory After the Fact." Applying § 2X3.1 in the instant case would result in treating Berkowitz as an accessory to his own alleged tax fraud and mail fraud. The official comments to § 2J1.2 indicate that such an application of § 2X3.1 is not appropriate. Therein, the Commission explains that § 2X3.1 is applied in obstruction of justice cases "[b]ecause the conduct covered by the [obstruction of justice] guideline is frequently part of the effort to assist *another person* to escape punishment for a crime he committed." (Emphasis added.) Since Berkowitz did not commit obstruction of justice to assist another person, § 2X3.1 is inapplicable. Therefore, the adjusted offense level for Counts I and II is 22.

#### b. *Count III*

Theft carries a base offense level of 4. § 2B1.1(a). Where the theft results in a loss of between $100,001 and $200,000, the offense level is increased by 8 levels. § 2B1.1(b)(I). In this case, the government has submitted that the cost of replacing the lost documents will amount to more than $100,000. Therefore, the Count III offense level is increased by 8 levels. The offense level is increased by an additional 2 levels because the offense involved more than minimal planning. § 2B1.1(b)(4). In addition, the court finds that the defendant committed perjury during trial. Therefore, the offense level is increased by another 2 levels, raising the total to 16. As with Counts I and II, the court rejects the government's argument that the offense level should be further increased because of Berkowitz's position of "private trust." Therefore, the offense level for Count III is 16.

### 2. The Combined Offense Level: Considering Multiple Counts

 Where the defendant is charged with multiple counts, the next step under

the guidelines requires the court to group the related counts, determine the applicable offense level for each group, and then determine the combined offense level based on the groupings. § 1B1.1(d). In the instant case, all three counts are closely related. They involve substantially the same harm because they relate to the same victim and the same criminal objective. Therefore, they are properly grouped together. § 3D1.2.

The government argues that Count III should not be grouped with Counts I and II because the victim in Count III is different from the victims in the other counts. The government contends that the victims in Counts I and II are "society at large" and the court system, while the victim in Count III is the U.S. Attorney's Office. The court rejects this argument. With respect to all counts, the victim is society. The U.S. Attorney's Office, as a representative of society, cannot reasonably be construed as a victim separate from society with respect to any offense committed by Berkowitz. Accordingly, Count III is properly grouped together with Counts I and II.

Pursuant to § 3D1.3, the offense level for any group is the highest offense level of any count in the group. In the instant case, Counts I and II have the highest offense level—22. Thus, that level applies to the group. In addition, since all of the charges in Berkowitz's indictment constitute a single group, level 22 represents Berkowitz's combined offense level. Due to the single grouping, Berkowitz's combined offense level is not adjusted upward, even though he is charged with separate counts. § 3D1.4.

### 3. Acceptance of Responsibility

■ Pursuant to § 3D1.5 of the guidelines, Berkowitz's combined offense level becomes his total offense level unless Berkowitz can show he is entitled to the adjustment in § 3E1.1. Under § 3E1.1, a defendant is entitled to a reduction of two levels from his combined offense level if he demonstrates an acceptance of personal responsibility for his criminal conduct. However, based on Berkowitz's perjured testimony at trial, the court finds that Berkowitz has not accepted responsibility for the crimes he committed. *See* official comment 4 to § 3E1.1. Although Berkowitz now claims that he has in fact accepted responsibility for his offenses, Berkowitz's eleventh hour manifestation of that responsibility is insufficient to entitle him to the reduction provided by § 3E1.1. *See* official comment 1(g) to § 3E1.1. Therefore, Berkowitz's total offense level is the same as his combined offense level—22.

### 4. Criminal History Category

Under ordinary circumstances, a defendant's criminal history category is determined by assigning point values to the defendant's past incidents of criminal behavior, adding these point values, and referring to the sentencing table to obtain the category associated with the aggregate point value. § 4A1.1. Under this method, Berkowitz falls within criminal history category I. Since Berkowitz has only one prior sentence—his 1977 probation—Berkowitz's criminal history amounts to only one point when § 4A1.1 is applied. This point total is associated with criminal history category I.

■ However, in this case, straight application of § 4A1.1 is not appropriate. Under § 4A1.3, the court may depart from the criminal history category calculated pursuant to § 4A1.1 where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of defendant's past criminal conduct.... Such information may include ... whether defendant was pending trial ... on another charge at the time of the instant offense...." Section 4A1.3 further provides:

A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history.... Examples might include the case of a defendant who ... committed the instant offense while on bail or pretrial release for another serious offense.

Applying the language of § 4A1.3 to the facts of this case, the court finds that the instant case presents precisely the type of

situation where departure from the otherwise applicable criminal history category is appropriate. Berkowitz committed the instant offenses while serious tax fraud and mail fraud charges were pending against him, and after he had been released on bond. Taking the especially egregious nature of these circumstances into account, the court finds that Berkowitz more appropriately falls within criminal history category III.

### 5. Sentencing Range

Using criminal history category III and the total offense level of 22, which this court has determined are appropriate, the applicable sentencing range for Berkowitz is 51 to 63 months. Ch. 5, Pt. A.

### B. *Sentence*

█ This court believes that in light of all of the considerations previously discussed herein, the appropriate sentence for Berkowitz is at the top of the applicable range. Accordingly, the court hereby sentences Berkowitz to a 63–month period of incarceration. However, Berkowitz shall be credited with the time he has already served since his arrest nearly seven months ago on November 7, 1988.

Pursuant to § 5D3.1, the court also orders a period of supervised release to follow Berkowitz's term of imprisonment. The length of Berkowitz's supervised release shall be two years. § 5D3.1(b). As a condition of his supervised release, Berkowitz shall not commit another federal, state, or local crime.

The guidelines also provide that the court shall impose a fine between $7,500 and $75,000 on a defendant whose total offense level is 22. § 5E4.2(c)(3). The guidelines further provide that the court shall impose the costs of imprisonment and supervised release on the defendant. § 5E4.2(i). In the instant case, the probation officer has indicated that the cost of imprisonment is $1,760 per month and the cost of supervised release is $1,100 per year. However, after conducting an *in camera* review of Berkowitz's financial statements, this court concludes it is not likely that Berkowitz will have the ability to pay a fine or the costs of imprisonment.

In addition, imposing financial penalties on Berkowitz may result in undue burden and hardship on Berkowitz's dependents. Accordingly, pursuant to § 5E4.2(f), the court waives the requirement that Berkowitz pay a fine or the costs of his imprisonment and supervised release. Nevertheless, Berkowitz is required to pay special assessments in the amount of $150. *See* 5E4.3.

IT IS SO ORDERED.