**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jules HUPPERT, Defendant–Appellant.**

No. 89–5917.

United States Court of Appeals,
Eleventh Circuit.

Nov. 20, 1990.

Robert M. Duboff, Miami, Fla. and James T. Duff, Los Angeles, Cal., for defendant-appellant.

Robert J. Bondi, William C. Healy, and Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before CLARK and COX, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

Jules Huppert appeals his conviction and subsequent sentence imposed under the guidelines. Appellant claims that the district court abused its discretion by allowing irrelevant and prejudicial surplusage in the indictment and by admitting prejudicial evidence of certain allegedly extrinsic monetary transactions that were not directly related to appellant's offense. Appellant requests a new trial. Appellant also claims that the district court erred by applying a cross-reference provision in the sentencing guidelines which allowed the court to sentence appellant as an accessory after the fact when he was a principal to the underlying offense and sought only to protect himself from being punished for the underlying offense. We find no error in the trial and affirm the conviction. However, we find that the district court incorrectly applied the cross-reference provision in this case and remand for resentencing.

## FACTS

Appellant Huppert engaged in money-laundering schemes with two different coin and precious metal dealers. In each, appellant followed basically the same pattern. He would order certain items, pay for them in cash, cancel the order and request a refund by way of check from the coin dealer. Huppert made three transactions with Continental Coin Company, through Continental's employee O'Rourke. Each transaction involved approximately $1 million in cash. In each case, the check was made payable to a Dr. Klaus Biedermann. However, Huppert destroyed the third check and asked O'Rourke to issue a new one payable to G.L.C. Investments. Huppert made one transaction with a long-time

friend Gary Gordon at Superior Stamp and Coin Company which involved $2.1 million in cash. Because Superior did not have the gold Huppert wanted, Gordon ordered it from Numismatics, Ltd. As a result, the refund check came from Numismatics rather than Superior. The check was made payable to Dr. Klaus Biedermann.

During the course of a grand jury investigation, both O'Rourke and Gordon were subpoenaed to testify before the grand jury. Both of them told Huppert they had been subpoenaed. Huppert then tried to get each of them to identify a Mr. Sam Gilbert as the person who had set up the phony transactions. He showed them a picture of Gilbert to aid in identifying him if the authorities had a picture. O'Rourke initially went along with Huppert's plan and identified Gilbert as the one who had brought the cash; ultimately, however, O'Rourke told what happened. Once Gordon learned of the grand jury investigation, he refused to cooperate with Huppert.

Huppert was indicted on two counts for obstructing justice in violation of 18 U.S.C. § 1503. Specifically, he was charged with attempting to persuade O'Rourke and Gordon to give false testimony before a grand jury that was investigating "possible violations of federal law involving money-laundering, drug trafficking and other related offenses." Appellant filed a pretrial motion to strike the above-quoted passage as surplusage pursuant to Crim.R. 7(d). The court denied the motion. Appellant also filed a motion *in limine* to exclude evidence of certain transactions which O'Rourke and Gordon used to cover the cash trail. The court denied the motion. A jury found Huppert guilty on both counts. Appellant was later sentenced to concurrent 30–month sentences on each count.

The guideline that covers obstruction contains a cross-reference provision to the guideline for accessory after the fact. U.S. S.G. § 2J1.2(c)(1).[1] The guideline for accessory after the fact simply reduces the offense level from the applicable underlying offense by six levels. § 2X3.1. The district court determined the underlying offense to be covered by § 2S1.3, Failure to Report Monetary Transactions; Structuring Transactions to Evade Reporting Requirements. The district court concluded that the government had presented sufficient evidence to prove appellant was guilty of structuring transactions to avoid reporting requirements. (R11–62–63). The district court also concluded that Huppert's interference with Gordon's and O'Rourke's testimony was an attempt to aid others to escape punishment for crimes they committed; this allegedly provided a basis for the court's application of the accessory after the fact cross-reference. § 2J1.2(c)(1). The government also requested that the court increase appellant's offense level by five levels pursuant to § 2S1.3(b)(1) because appellant should have known that the funds were criminally derived. The court concluded, however, that the government had failed to prove that appellant *knew or believed* the funds were criminally derived as required by the guideline. (R11–93).

## DISCUSSION

### A. *Application of the Sentencing Guidelines*

Appellant argues that the district court erred by applying the cross-reference provision and sentencing appellant as an accessory after the fact when appellant was a principal to the underlying offense and where the evidence clearly showed that appellant sought to protect only himself from being entangled in the investigation of the money-laundering scheme. Huppert's appeal of his sentence raises two distinct questions: (1) whether a principal to an offense can be sentenced as an accessory when the principal has engaged in conduct to avoid being punished for the crime; and (2) whether the guideline for obstruction of justice permits a cross-reference when the defendant's primary purpose is to protect himself. The conduct which gives rise to Huppert's obstruction conviction and possi-

---

1. This guideline states in pertinent part: "If the offense involved obstructing the investigation or prosecution of a criminal offense, Apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above."

ble liability as an accessory after the fact is his attempting to get O'Rourke and Gordon to lie about who came to them with the cash. The government argues that this conduct is separate from Huppert's efforts to structure transactions to evade reporting requirements and that the cross-reference exists to allow a court to look through the obstruction conviction and sentence a defendant for the underlying offense.

■ We have no dispute with the district court's findings of fact that Huppert attempted to get Gordon and O'Rourke to lie to the grand jury, or that Huppert did not know that the funds were derived from criminal sources. Whether a particular guideline applies, however, is a mixed question of law and fact. *United States v. Scroggins,* 880 F.2d 1204, 1206 n. 5 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). We review the district court's findings of fact under the clearly erroneous standard; its application of law to those facts is subject to de novo review. *United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990). "Factual issues include basic, primary or historical facts, such as external events and credibility determinations." *Martin v. Kemp,* 760 F.2d 1244, 1247 (11th Cir.1985). Whether Huppert was an accessory after the fact, *i.e.,* whether he was assisting others to escape punishment, is a legal conclusion subject to de novo review. We find that the district court erred in concluding that Huppert attempted to protect others and was therefore liable as an accessory after the fact.

We disagree with the district court's conclusion for two reasons. First, Huppert did not ask Gordon and O'Rourke to lie about the fact that the transaction occurred, but instead asked them to identify someone other than Huppert as the person who brought them the cash. This is an act directed at protecting Huppert from being punished for the crime of structuring transactions. Second, Huppert told Gordon and O'Rourke to identify Sam Gilbert as the person who brought them the cash. Although Gilbert was deceased at the time

Huppert asked Gordon and O'Rourke to falsify their testimony, he was involved in the laundering scheme with Huppert. Thus, rather than protecting others involved in the laundering scheme, Huppert asked them to identify someone else in the scheme. We recognize that by protecting himself, a defendant may protect others as well; however, given Huppert's method of protecting himself, he clearly was not concerned with others.

■ We also conclude that Huppert cannot be sentenced as an accessory since the district court concluded that the government proved he was guilty of structuring transactions to avoid reporting requirements, the underlying offense pursuant to § 2S1.3(a)(1)(A). (R11–62–63). Where the evidence points to a defendant's involvement as either an accessory or a principal, the government is allowed to bring a single indictment with inconsistent counts; *i.e.,* one alleging complicity as a principal and another alleging complicity as an accessory after the fact. Such an indictment is permissible when the question of whether the defendant is a principal or an accessory is one of fact to be resolved by the jury. *See, e.g., United States v. Day,* 533 F.2d 524, 526 (10th Cir.1976), *cert. denied,* 444 U.S. 902, 100 S.Ct. 214, 62 L.Ed.2d 139 (1979). However, the defendant may not be convicted of both. *United States v. Willis,* 559 F.2d 443, 444 (5th Cir.1977). In that case the court aptly stated:

> The gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he has committed the crime. Evidence of this offense is most frequently found in acts which harbor, protect and conceal the individual criminal ... *The very definition of the crime also requires that the felony not be in progress when the assistance is rendered* because then he who renders assistance would aid in the commission of the offense and be guilty as a principal....

*Id.* (emphasis in original). *Cf. Bollenbach v. United States,* 326 U.S. 607, 610–11, 66

S.Ct. 402, 403, 90 L.Ed. 350 (1946) ("Congress has not made accessories after the fact principals. Their offense is distinct and separately punished").

■ The guideline itself contemplates that one sentenced through the cross-reference as an accessory cannot be a principal. The Commentary states in part: "Because the conduct covered by this guideline is frequently part of an effort to assist *another* person to escape punishment for a crime *he* has committed, an alternative reference to the guideline for accessory after the fact is made." § 2J1.2, *Background* (emphasis added). *See United States v. Berkowitz*, 712 F.Supp. 707, 709 (N.D.Ill. 1989) (guideline is explicit and "another" means someone other than defendant). We agree with the district court's conclusion that a sentencing court "is permitted to look beyond the four corners of the charge to the underlying conduct." This practice is clearly permissible under the guidelines. *See* U.S.S.G. § 1B1.3. *See also Scroggins*, 880 F.2d at 1211–14. However, under the guidelines, relevant conduct is incorporated into the base offense level by a prescribed process. *See* § 1B1.1. *See, e.g., Scroggins*, 880 F.2d at 1209–10 (guideline enhances offense level based on monetary loss associated with offender's conduct; in calculating total amount of loss, court may include amounts not contained in offense of conviction provided it meets criteria of § 1B1.3). Section 2J1.2(c)(1) provides a specific method by which a court may consider conduct outside the offense of conviction. That method is consistent with our understanding of the law of principals and accessories. Because Huppert cannot be sentenced as an accessory after the fact, we conclude that the district court incorrectly applied § 2J1.2(c)(1) to this case. Therefore, the case must be remanded for resentencing in accordance with § 2J1.2(a), which provides a base offense level of twelve for obstruction of justice without cross-reference to § 2J1.2(c)(1) or the underlying offense provision of § 2S1.3(a)(1)(A).

## B. *Surplusage in the Indictment*

■ Appellant also asserts that the district court abused its discretion by denying appellant's motion to strike surplusage from the indictment which appellant alleged was irrelevant and prejudicial. Appellant sought to delete a clause from the indictment stating that the grand jury was "inquiring ... into possible violations of Federal Criminal Law involving money-laundering, drug trafficking and other related offenses...." In *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971) (affirming district court's denial of motion to strike), the court concluded that words will not be stricken from the indictment unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. The court further noted that this is a most "exacting standard." *Id.* (citing 1 C. Wright, *Federal Practice and Procedure* § 127 at 424–29 (1982)).

Appellant argues that the quoted paragraph was prejudicial. He notes that the district court excused two prospective jurors who stated that since this case involved drugs, they did not feel they could be objective. The judge cautioned the remaining jurors that the information was in the indictment solely to inform them the purpose of the grand jury investigation. We are confident the jury could understand the court's instructions and separate background information from the law and the relevant facts.

## C. *Evidence of Extraneous Transactions*

■ Finally, appellant asserts that the district court abused its discretion by admitting evidence of certain monetary transactions that Continental Coin Co., Superior Stamp and Coin Co. and Numismatics, Ltd. used to cover the cash transactions. The district court denied appellant's motion to exclude "the voluminous documents from the Superior Stamp and Coin Company, the Numismatics Coin Company and the Continental Coin Company, substantiating the underlying money-laundering offenses, [on the ground that they were] not relevant and constituted unfairly prejudicial and confusing evidence." The appellant, however, concedes that the evidence is relevant

**512**

and rests his argument solely on the undue prejudice prong of *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The government argues that the evidence is not subject to the 404(b) analysis discussed in *Beechum*, but instead is admissible because it "pertain[s] to the chain of events explaining the context, motive and set-up of the crime [which] is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford*, 764 F.2d 1493, 1498 (11th Cir.1985). Regardless of whether this evidence is subject to the first prong of *Beechum*, all evidence is subject to Rule 403's balancing test, which is the second prong of *Beechum*.

In *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989), we stated:

> the court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." ... The balance under the Rule, therefore, should be struck in favor of admissibility.

The court further commented that "[i]t is only when the probative value of evidence is 'substantially outweighed by the danger of *unfair* prejudice' ... that relevant evidence should be excluded." *Id.* at 1362 (quoting *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir.1982) (emphasis in original)).

Appellant also argues that since he was "prepared to stipulate that the Grand Jury was investigating money-laundering activities engaged in by other individuals in order to eliminate the need for this volume of evidence," the evidence was more prejudicial because it was unnecessary. In *United States v. O'Shea*, 724 F.2d 1514, 1516 (11th Cir.1984), the court noted that there is "no per se rule against admission of evidence where defendant offers to stipulate an element of the offense." The court held that "an offer to stipulate is one factor in 403 analysis." *Id.* The government argues that the information was necessary to put the obstruction charge in context. The substance of the charge against Huppert was that he tried to get O'Rourke and Gordon to lie about his involvement with certain transactions. This background information, while not crucial, was necessary to give the jury a reason why Huppert, a bank president, would try to get Gordon and O'Rourke to lie. The district court did not abuse its discretion.

### CONCLUSION

For the foregoing reasons, appellant's conviction is AFFIRMED; the sentence imposed is REVERSED and the case REMANDED for resentencing consistent with this opinion.