**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Tommy B. JAMISON, Defendant–Appellee.**

No. 92–5668.

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1993.

Decided June 14, 1993.

Mark C. Moore, Asst. U.S. Atty., Columbia, SC, argued, (John S. Simmons, U.S. Atty., Elise Freeman, Second–Year Law Student, on brief), for plaintiff-appellant.

Susan Zalkin Hitt, Asst. Federal Public Defender, Columbia, SC, for defendant-appellee.

Before MURNAGHAN and NIEMEYER, Circuit Judges, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, Sitting by Designation.

## OPINION

HILL, Senior Circuit Judge:

The United States appeals the district court's application of the United States Sentencing Guidelines (U.S.S.G.). Defendant–Appellee Tommy Jamison was convicted of making a false declaration under oath pursuant to 18 U.S.C. § 1623(c). The district court sentenced Jamison under the guideline for perjury, U.S.S.G. § 2J1.3, and declined to enhance the sentence through a cross reference to § 2X3.1, Accessory After the Fact. For the reasons that follow, we vacate the sentence and remand the case to the district court for resentencing.

### I.  *Background*

In the summer of 1990, Tommy Jamison was working as an undercover informant for the Drug Enforcement Administration (DEA) in an investigation of Curtis Marcus, a known cocaine distributor. Jamison had had prior drug-related dealings with Marcus and, during 1990, twice purchased crack cocaine from Marcus under the direction of federal and state law enforcement officials.

In August, 1990, Paul Simmons, then coroner of Orangeburg County, South Carolina, contacted Jamison, expressing an interest in purchasing a kilogram of cocaine. Jamison informed law enforcement officials of the overture, and they told Jamison to negotiate the terms of sale. He did so and, on August 23, Simmons attempted to make the purchase from an undercover DEA agent. Simmons was detained and confessed that he had intended to sell the cocaine in order to make money for a failing funeral home business. Simmons assured the DEA that he would cooperate with them and he was released.

Jamison signed a statement detailing his participation in the sting operation. Thereafter, Jamison's version of these events went back and forth more often than a badminton bird. In the weekend following August 23, Jamison and Simmons fabricated a new and different story. Under this version, Simmons had never had any criminal intentions, had known of the involvement of law enforcement officials and had set the agents up. Simmons' ostensible motive for this "reverse

sting" was to prove that the Orangeburg County sheriff was "out to get him." In support of this new story, Jamison recanted the statement he had given on the night of August 23.

Then the bird flew back over the net. On September 11, in a recorded interview with law enforcement officials, Jamison admitted that he and Simmons had fabricated the reverse sting story. Jamison told the officers that he had contacted Simmons on August 24 and that the two had decided to manufacture audio tapes which were supposed to represent telephone conversations of the previous week in which Jamison appeared to keep Simmons informed of the details of the DEA's plan. In his September 11 statement, Jamison suggested that he had been motivated to exculpate Simmons because he feared the effect that news of Simmons' indictment would have on the black community. Jamison's testimony before a grand jury later that same day followed his August 23 statement and included no mention of the reverse sting or the fabricated tapes.

Yet the shuttle continued. At Simmons' trial in November, 1990, retracting his retracted retraction, Jamison testified that he had lied before the grand jury and again offered the reverse sting story. Despite this testimony, Simmons was convicted of attempting to possess cocaine.

At Simmons' sentencing hearing, Jamison had his final swing at the shuttlecock, reversing his position once again and admitting that he had committed perjury at the trial.

Jamison subsequently pleaded guilty to making a false declaration under oath under 18 U.S.C. § 1623(c). At his sentencing hearing, Jamison told the court that Curtis Marcus, the cocaine distributor, had threatened to kill Jamison and his family because of Jamison's work with the DEA. Jamison contended that helping Simmons avoid conviction would prevent reprisals by Marcus. The government noted at sentencing that Jamison had previously stated that he was motivated to help Simmons because of Simmons' important position in the black community.

The government objected to the sentence recommended in the pre-sentence report, arguing that Jamison should be sentenced within the guideline range for an accessory after the fact to attempted possession of cocaine, a range significantly higher than the range for perjury. The district court denied the government's objection and sentenced Jamison to a term of probation. The United States filed this appeal.

## II. *Discussion*

Section 2J1.3 of the Guidelines provides a base offense level of twelve for perjury. Subsection 2J1.3(c) is a cross reference section which directs:

> If the offense involved perjury or subornation of perjury in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

United States Sentencing Commission, *Guidelines Manual,* § 2J1.3(c) (Nov. 1992). Section 2X3.1 sets the offense level for accessory after the fact at six levels below the level for the offense to which the defendant was an accessory. U.S.S.G. § 2X3.1.[1]

The government contends that the district judge refused to apply the cross reference because he misinterpreted the decision of this court in *United States v. Pierson,* 946 F.2d 1044 (4th Cir.1991). In *Pierson,* the defendant was charged with unlawful possession of and detonation of a bomb and with lying to a grand jury about his presence at the scene of the explosion. He was acquitted of the explosives charges but convicted of perjury. Because Pierson's perjury was clearly "in respect to a criminal offense," under the terms of § 2J1.3(c), the court held that cross reference to the more stringent section 2X3.1 was required "unless § 2X3.1 by its terms does not apply to the facts in this case." 946 F.2d at 1046.

The *Pierson* court concluded that the accessory guideline should not apply in that case because Pierson had been prosecuted as

---

1. Thus, for example, Jamison's base offense level would equal twelve if the court did not employ the cross reference and twenty if the court sentenced Jamison under § 2X3.1 with reference to Simmons' offense of attempted possession of one kilogram of cocaine.

a principal in the underlying explosives offenses. The court adopted the conclusion of the Eleventh Circuit in *United States v. Huppert*, 917 F.2d 507 (11th Cir.1990), that a principal cannot be sentenced as an accessory under the cross reference when he lies to protect himself, rather than another, from criminal punishment.[2]

The *Pierson* court focused on the anomaly of sentencing a defendant as if he were an accessory to his own crime. Because Pierson was prosecuted as a principal in the bombing, the court found it inappropriate to sentence him as an accessory to another's crime where it was "more than likely that Pierson was trying to protect himself, rather than others." 946 F.2d at 1048.[3]

Jamison urges that, because he was trying to protect himself and his family from Curtis Marcus, *Pierson* prohibits application of the accessory cross reference. We disagree. *Pierson* provides only that in sentencing a defendant for perjury under § 2J1.3, the court should employ the cross reference to § 2X3.1 *unless* the "underlying offense" to which the latter section refers was one for which the defendant was exposed to criminal prosecution. The concern underlying both *Pierson* and *Huppert*, namely, that an individual not be sentenced as an accessory to his own crime, is not implicated in cases such as this one where the defendant is at no risk of criminal punishment for the underlying offense.

The decision of the Seventh Circuit in *United States v. Curry*, 977 F.2d 1042 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 1357, 122 L.Ed.2d 737 (1993), provides an instructive analogy. In *Curry,* one of the participants in a marijuana processing conspiracy, Robert Holland, lied to a grand jury while under a grant of immunity. He was convicted of perjury and sentenced under the accessory cross reference. The Seventh Circuit upheld the sentence, distinguishing *Pierson* and *Huppert* on grounds that this defendant was immunized for his testimony and so "had no reason to protect himself." 977 F.2d at 1059. Because Holland had no reason to fear criminal punishment for the substantive crimes in the case, the *Curry* court concluded that he intended through false statement to aid others and could be sentenced under the accessory guideline.

In the instant case, Jamison lied about a criminal offense for which he was at no risk of indictment. His lie was calculated to assist Simmons and to obstruct prosecution of Simmons. Unlike the defendants in *Pierson* and *Huppert,* Jamison could not be prosecuted as a principal in the offense addressed by his false statements. Thus, the concern motivating the *Pierson* and *Huppert* courts is not raised here. Any ambiguity that may have followed the decision of this court in *Pierson* should be laid to rest by our holding that *Pierson* is limited to cases in which a criminal defendant lies to protect himself or herself from criminal punishment for the offense addressed by a false statement. The intended effect of the false statement, as distinguished from the speaker's motivation for making it, is dispositive. In this case, Jamison intended through the reverse sting story to exculpate Simmons from a charge of

**2.** *Huppert* dealt with the guideline provision for obstruction of justice, § 2J1.2, but the *Pierson* court found that § 2J1.2 and § 2J1.3 should be treated similarly for purposes of the accessory cross reference. 946 F.2d at 1047–48.

**3.** In 1991, the Guidelines Commission amended the commentary on which both the *Pierson* and *Huppert* courts relied in a manner which casts doubt upon the continued validity of those decisions. The amendment altered the background commentary to the obstruction of justice guideline § 2J1.2 as follows:

> [B]ecause the conduct covered by this guideline is frequently part of an effort to ~~assist~~ ~~another person to escape punishment for a~~ ~~crime which he has committed, an alternative~~ ~~reference to the guideline for accessory after~~

> ~~the fact is made~~ [avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person.]

Guidelines Manual, § 2J1.2, comment. (backg'd.) (new material in brackets).

In view of our holding that *Pierson* and *Huppert* are distinguishable from the instant case, we reserve for another day a decision on the impact of the amended commentary on our precedent.

attempted possession of cocaine. Because Jamison did not intend to exculpate himself from that or any other charge, the accessory cross reference should be applied and *Pierson* is not to the contrary.

Because the district court apparently accepted Jamison's reading of *Pierson* and declined to apply the § 2J1.3(c) cross reference to § 2X3.1, Accessory After the Fact, we remand the case for resentencing. We note that the court considered and apparently credited Jamison's statement that Curtis Marcus' threats motivated him to commit perjury. Although we hold today that the court must apply the accessory cross reference, we observe that application of this section does not impair the ability of the court to consider a departure downward from the offense level or an alternative adjustment of the sentence under relevant provisions of the Sentencing Guidelines. Because the court accepted Jamison's interpretation of *Pierson*, Jamison never raised the possibility of a downward departure for coercion or duress under, for example, U.S.S.G. § 5K2.12.[4] On remand, the court is free to consider the full range of adjustments properly applicable to Jamison's case.

The sentence is vacated and the case remanded for resentencing.

*VACATED AND REMANDED.*

MURNAGHAN, Circuit Judge, concurring:

I concur in the judgment of the majority because Jamison was, in fact, an accessory after the fact whether he perjured himself to aid Simmons or to safeguard himself and his family. I write separately, however, in order to indicate that I do not find that the district court's determination that Jamison lied in an effort to protect himself was clearly erroneous. Since my reading of § 2X3.1 would not require that we address the question of why Jamison perjured himself, I do not believe it

necessary for us to reverse that factual finding of the district court.

---

4. The duress guideline, § 5K2.12 provides, in relevant part:

   If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Or-

dinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

U.S.S.G. § 5K2.12.