34 F.3d 1067
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Milton DEMORY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Delores SMALS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Milton DEMORY, Defendant-Appellant.
 Nos. 92-5685, 92-5824, 92-5825.
 United States Court of Appeals, Fourth Circuit.
 Argued June 9, 1994.
Decided August 12, 1994.
 
 Argued: John William Acree, Acree & Associates, P.C., Woodstock, VA; Walter Franklin Green, IV, Green & O'Donnell, Harrisonburg, VA, for Appellants.
 Jean Barrett Hudson, Assistant United States Attorney, Charlottesville, VA. On brief: Robert P. Crouch, Jr., United States Attorney, Charlottesville, VA, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants in this case raise several challenges to their convictions and sentences resulting from a series of bank robberies and a conspiracy to commit perjury during the bank robbery trial. For the most part, we find that these challenges lack merit. However, because the district court erred in sentencing one of the appellants, her sentence is vacated and the case remanded for resentencing.
 
 I.
 
 2
 On June 22, 1990, appellant George Demory was indicted on two counts of bank robbery, see 18 U.S.C. Secs. 2113(a) & (d), and two counts of using or carrying a firearm during a violent crime, see 18 U.S.C. Sec. 924(c). The robberies took place in Winchester, Virginia, on January 25 and February 5 of 1990. After pleading not guilty to the charges, Demory filed a Notice of Alibi stating that he was at the residence of appellant Dolores Smals, his former wife, in Ransom, West Virginia, on the dates of the robberies. The Notice also stated that Demory visited the Whitmore Lumber Company, a business in Charles Town, West Virginia, on January 25.
 
 
 3
 Demory's Notice of Alibi prompted an FBI investigation, which led to the discovery that Smals had obtained false receipts from Whitmore Lumber. One such receipt, dated January 25, 1990, reflected a purchase of quarter round molding made at Whitmore by Smals. The FBI's investigation indicated, however, that Smals was not the customer who had made that purchase. The second false receipt, dated February 5, 1990, was a handwritten delivery ticket from Whitmore Lumber bearing George Demory's signature. A sequence number on that receipt indicated that it could not have been written until March 1991, more than a year after the purchase it allegedly recorded. An employee of Whitmore Lumber, John Donovan, later testified that he wrote a February 5, 1990, delivery receipt for Smals, and that he received $100 for doing so. Donovan also stated that he provided her with a photocopy of a January 25, 1990, cash receipt for an additional $50.
 
 
 4
 Having determined the receipts were false, the government sought to indict Demory and Smals for conspiracy to commit perjury, see 18 U.S.C. Secs. 1623 & 371. A grand jury formally indicted the two on June 20, 1991. The investigation also resulted in the resignation of Demory's attorney, Thomas Blaylock, necessitating the appointment of a new attorney for Demory.
 
 
 5
 On January 6, 1992, Demory's bank robbery trial commenced in the Western District of Virginia. At trial, Demory relied on his alibi defense, although Smals chose not to testify on his behalf. In response to Demory's alibi, the government introduced the falsified receipts at trial. On January 8, 1992, the jury convicted Demory on all four counts. Demory was sentenced to sixty-five months imprisonment for each of the two bank robberies, to run concurrently, as well as sixty months on the first firearms charge and 240 months on the second firearms charge, to run consecutively to the bank robbery sentence.
 
 
 6
 On September 24, 1992, Demory and Smals' trial for conspiracy to commit perjury commenced, again in the Western District of Virginia. The jury returned guilty verdicts for both of the defendants the next day. After denying defendants' motions for a new trial or a judgment of acquittal, the court sentenced Demory to fourteen months and Smals to thirty months imprisonment. Both defendants now appeal.
 
 II.
 
 7
 George Demory raises several challenges to his convictions and sentence resulting from his bank robbery trial. Demory's first claim on appeal is that the outcome of his bank robbery trial was tainted by prosecutorial misconduct. Appellant asserts that the indictment of Smals prior to that trial was intended to prevent Smals from testifying on his behalf. Demory maintains that Smals was the only person who could fully corroborate his alibi that he was working on her house on the dates of the two robberies.
 
 
 8
 We find this argument unpersuasive. The test for reversible prosecutorial misconduct is well-established in this circuit, and includes two central components: " '(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.' " United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988) (quoting United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985)); see also United States v. Mitchell, 1 F.3d 235, 240 (4th Cir.1993). Here, neither element of the test is satisfied. First, nothing indicates that the prosecutor acted improperly in bringing an indictment against Smals for conspiracy to commit perjury. An FBI investigation yielded strong evidence that Demory and Smals had in fact engaged in such a conspiracy. In light of that evidence, the prosecutor was free to pursue the indictment. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).
 
 
 9
 Second, even if Smals were improperly indicted, Demory cannot show that her failure to testify at his bank robbery trial prejudiced his case. Smals' role at that trial would have been to support Demory's alibi defense. Yet, even without Smals, Demory was able to present his alibi to the jury. Demory himself testified to his whereabouts on January 25 and February 5, 1990. He testified that he went to Whitmore Lumber with Smals on January 25, and that he signed a delivery receipt from Whitmore on February 5. Smals' husband, Lewis Smals, testified that Demory was at the Smals' residence on January 25, 1990, and that Demory left the house for approximately thirty minutes to pick up molding for his carpentry work. Willard Lynch testified that he saw Demory at the Smals' residence on February 5, 1990. Thus, the absence of Dolores Smals did not prevent the jury from hearing Demory's alibi.
 
 
 10
 More importantly, Smals' decision not to testify at Demory's trial may have benefitted Demory's case rather than impaired it. The FBI investigation indicated that it was Smals who obtained the false receipts from Whitmore Lumber. Had Smals taken the witness stand, the prosecution could have explored her role in creating a false alibi for Demory. It is hard to imagine that such cross-examination would not have severely detracted from Demory's alibi defense. Accordingly, Smals' decision not to testify may well have been a tactical choice motivated by a desire to limit the prosecution's attack on Demory's alibi defense. Considering the record as a whole, it is simply impossible to conclude that the indictment of Smals contributed to a "miscarriage of justice." Mitchell, 1 F.3d at 239-40.
 
 
 11
 Demory also challenges the sentence resulting from his bank robbery trial. Specifically, Demory claims that he could not receive twenty years imprisonment for his conviction on the second firearms count because the indictment did not state that the count was for a "second or subsequent offense." Demory maintains that the failure to specifically allege Count Four as a second firearms offense precludes enhanced punishment under 18 U.S.C. Sec. 924(c).
 
 
 12
 Section 924(c)(1) states, in pertinent part,
 
 
 13
 [w]hoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years....
 
 
 14
 The Supreme Court has squarely held that a second conviction under Sec. 924(c)(1), giving rise to the enhanced twenty-year term of imprisonment, may result from the same indictment under which the first Sec. 924(c)(1) conviction was obtained. See Deal v. United States, 113 S.Ct. 1993 (1993). Similarly, this court has explained that "[t]he plain meaning of the statute supports the conclusion that a conviction on a second firearms count, even though charged in the same indictment as the first, gives rise to the enhanced sentence." United States v. Raynor, 939 F.2d 191, 193 (4th Cir.1991). Thus, there can be little question as to the propriety of imposing a twenty-year sentence for a second firearms count included in a single indictment.
 
 
 15
 Demory's argument that the second firearms count in his indictment did not state that it addressed a "second or subsequent offense" does not alter this conclusion. As the Deal Court explained, all that is required for a twenty-year sentence under Sec. 924(c)(1) is a "conviction after the first conviction." Deal, 113 S.Ct. at 1998 (emphasis in original). Nothing in Sec. 924(c)(1) requires that a subsequent "offense" be charged; rather, the term "conviction" refers simply to "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." Id. at 1996. In this case, Demory was certainly convicted on two distinct firearms charges. As the conviction on Count Two necessarily preceded the conviction on Count Four, the court acted properly in sentencing Demory to twenty years on Count Four.
 
 III.
 
 16
 Appellants Demory and Smals jointly raise several challenges to their convictions for conspiracy to commit perjury. They first allege that the district court erred in ruling that the government met its burden of proof as to the conspiracy charges. Accordingly, they claim that the district court improperly denied their FED. R. CRIM. P. 33 motion for a new trial and their FED. R. CRIM. P. 29 motion for judgment of acquittal.
 
 
 17
 We note at the outset that a jury's verdict of guilty "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); see also United States v. Blue, 957 F.2d 106, 107 (4th Cir.1992). The relevant question is whether, after viewing the evidence in that light, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Here, we have no doubt that the jurors were presented with sufficient evidence to find the existence of an illegal conspiracy.
 
 
 18
 To establish the existence of a conspiracy in violation of 18 U.S.C. Sec. 371, "the government must prove an agreement between two or more persons to act together in committing an offense and an overt act in furtherance of the conspiracy." United States v. Chorman, 910 F.2d 102, 109 (4th Cir.1990). In showing that a defendant knowingly participated in the conspiracy, the government may rely on circumstantial evidence. See Glasser, 315 U.S. at 80. Here, evidence at trial demonstrated the existence of an agreement, an overt act, and knowing participation by both Demory and Smals. The government presented to the jury Demory's Notice of Alibi, which stated that he was at Smals' house on the days the robberies occurred. The government presented additional evidence that Smals obtained false receipts corresponding to those dates, and that she delivered those receipts to Demory's first attorney. One of those receipts--the one dated February 5, 1990--was signed by Demory. This evidence alone would be sufficient to support a finding that there was a " 'tacit or mutual understanding between or among the alleged conspirators.' " Chorman, 910 F.2d at 109 (quoting United States v. Reifsteck, 841 F.2d 701, 704 (6th Cir.1988)). Such an understanding is sufficient to show the existence of a "conspiratorial agreement." Id.
 
 
 19
 A rational jury also could have concluded that both Demory and Smals were knowing participants in the conspiracy. Demory indicated his participation by filing a Notice of Alibi stating that he was present at both Smals' residence and Whitmore Lumber on the dates of the robberies, reflecting an intended reliance on the false receipts. Similarly, it would be entirely reasonable for the jury to conclude that Smals' delivery of the receipts to Demory's attorney was not an attempt to construct a defense for Demory without his knowledge or participation. As to Smals, her participation cannot be disputed--she was the person primarily responsible for obtaining the false receipts and delivering them to Demory's attorney. These acts not only indicated Smals' participation in the conspiracy, but were also more than sufficient to constitute overt acts in furtherance of the conspiracy.
 
 
 20
 Given the evidence presented by the government at trial, the district court acted properly in denying the motions based on sufficiency of the evidence. We have no trouble concluding that jury's verdict was supported by substantial evidence.
 
 
 21
 Appellants' second contention is that venue for the conspiracy trial was improper in the Western District of Virginia. They maintain that the government could not prove, by a preponderance of the evidence, see United States v. Griley, 814 F.2d 967, 973 (4th Cir.1987), that any part of the criminal conspiracy took place in that district. Appellants focus on the fact that both Smals' residence and the Whitmore Lumber Company are located in West Virginia.
 
 
 22
 This contention lacks merit. The applicable venue statute provides that, "[e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. Sec. 3237(a). Appellants are certainly correct that venue would be proper in the district where Smals obtained the falsified receipts. Venue is also proper, however, in any district where any part of the ongoing conspiracy to commit perjury occurred. See United States v. Barfield, 969 F.2d 1554, 1557 (4th Cir.1992). The government presented sufficient evidence in this case to establish that a portion of the conspiracy occurred in the Western District of Virginia. For example, Smals presented the false receipts to Demory's attorney, Thomas Blaylock, an attorney who practiced out of Roanoke, Virgnia. While appellants maintain that the location of Blaylock's practice was never established, Demory's Notice of Alibi is printed on Blaylock's professional stationery, which is marked "Thomas M. Blaylock, Attorney at Law, Roanoke, Virginia." Furthermore, the Notice of Alibi--which itself constituted part of the conspiracy to commit perjury--was filed in the Western District of Virginia in the course of Demory's bank robbery trial. Similarly, Demory's testimony at trial that he went to Whitmore Lumber with Smals and signed the delivery receipt on February 5, 1990, was also part of the conspiracy. In all, the jury was presented with more than sufficient evidence tying the charged conspiracy to the district in which it was tried.[1]
 
 
 23
 Appellant's third contention is that a new trial is mandated because of Demory's absence from the courtroom when the jury returned from its deliberations to ask the court two questions. Appellants rely on FED. R. CRIM. P. 43, which states in part:
 
 
 24
 (a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of the sentence, except as otherwise provided by this rule.
 
 
 25
 Rule 43, however, does not require a continued presence under all circumstances. For example, the Rule states:
 
 
 26
 (b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
 
 
 27
 (1) is voluntarily absent after the trial has commenced....
 
 
 28
 See also United States v. Rogers, 853 F.2d 249, 252 (4th Cir.1988).
 
 
 29
 In this case, the facts demonstrate that Demory did indeed waive his right to be present for the jury's questions. First, Demory's counsel failed to notify the court of Demory's absence until after the jury was excused from the courtroom. Second, upon learning of Demory's absence, the court took immediate curative steps. The court called Demory to the courtroom and informed him of the jury's questions and of the answers which were given to the jury. The court then stated that it was "more than glad to bring [the jury] back in and reinstruct them in your presence, if you would like that done, as to the very things I have gone over here." After stating that he understood the court's offer, Demory responded that he did not wish the jury to be recalled. The court went well beyond merely inquiring as to Demory's whereabouts, see Rogers, 853 F.2d at 252, and Demory's decision to decline the court's offer to reinstruct the jury constituted a waiver of the right to be present.
 
 IV.
 
 30
 Finally, Delores Smals claims that the district court erred in calculating her sentence for conspiracy to commit perjury. Specifically, Smals maintains that the court incorrectly sentenced her under the Sentencing Guidelines provision for perjury, see U.S.S.G. Sec. 2J1.3, which the court applied because of the cross-reference provision in the guideline applicable to conspiracies, see U.S.S.G. Sec. 2X1.1(c). Because the law comports with Smals' view, we vacate her sentence and remand to the district court for resentencing.
 
 
 31
 Section 2X1.1 of the Sentencing Guidelines, titled "Conspiracies, Attempts, Solicitations," is the guideline generally applicable to defendants convicted of conspiracy. It provides that the base offense level for sentencing is to be derived from the offense level for the underlying substantive offense, modified by certain offense characteristics enumerated in Sec. 2X1.1. Not all conspiracies, however, are sentenced under Sec. 2X1.1. Rather, Sec. 2X1.1(c) states that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." Here, the district court applied the cross-reference provision ofSec. 2X1.1(c) and sentenced Smals under Sec. 2J1.3, the guideline applicable to the substantive offense of perjury or subornation of perjury.
 
 
 32
 Section 2X1.1(c)'s cross-reference provision is properly applied, however, only when another guideline "expressly cover[s]" sentencing for a given type of conspiracy. This will be the case under either of two circumstances. First, if a guideline specifically states that it applies to a particular type of conspiracy, it will take precedence over the general conspiracy guideline. See U.S.S.G. Sec. 2X1.1, comment. (n.1).[2] Second, even if a guideline does not specify that it covers conspiracies, a conspiracy may be sentenced under that guideline if "the guideline expressly covers a stated statutory section and that section expressly prohibits conspiracy." United States v. Skowronski, 968 F.2d 242, 250 (2d Cir.1992). For example, a defendant convicted of conspiracy to kidnap may be sentenced under the guideline for kidnapping because the federal kidnapping statute specifically prohibits conspiracies to commit a kidnapping offense. See United States v. DePew, 932 F.2d 324 (4th Cir.1991); 18 U.S.C. Sec. 1201(c); see also Skowronski, 968 F.2d at 250 (allowing defendant convicted of conspiracy to violate the Hobbs Act to be sentenced under guideline for substantive Hobbs Act violations because the Act specifically prohibits conspiracies).
 
 
 33
 In contrast to the two situations described above, a defendant must be sentenced directly under Sec. 2X1.1 if the conspiracy for which she is convicted is not "expressly covered" by another guideline. Typically, this will be the case "when the prosecution is under 18 U.S.C. Sec. 371, which prohibits conspiracy to commit an offense against the United States." Skowronski, 968 F.2d at 249-50. This is so because Sec. 371 "encompasses conspiracies to violate statutory provisions that prohibit only a substantive offense but do not themselves prohibit conspiracy." Id. at 250. The prosecution of Smals for conspiracy to commit perjury was, in fact, brought under 18 U.S.C. Sec. 371, the only possible route since the applicable perjury statute does not make any mention of conspiracies. See 18 U.S.C. Sec. 1623. Furthermore, the guideline applicable to those convicted of perjury does not specify that it covers conspiracies to commit perjury. See U.S.S.G. Sec. 2J1.3.
 
 
 34
 Accordingly, the district court erred by sentencing Smals under Sec. 2J1.3.[3] The court should have applied the general conspiracy guideline, Sec. 2X1.1, in calculating Smals' sentence.
 
 
 35
 In sum, the commentary to Sec. 2X1.1 does not list Sec. 2J1.3, the guideline applicable to the substantive offense of perjury, as one of the guidelines that expressly covers conspiracies. At the same time,
 
 
 36
 Sec. 2X1.1's commentary specifically lists 18 U.S.C. Sec. 371 as one of the primary statutory provisions to which the guideline applies. Accordingly, Smals' sentence should have been calculated in accordance with Sec. 2X1.1 itself. Because the cross-reference to Sec. 2J1.3 under Sec. 2X1.1(c) was erroneous, and may have affected the length of Smals' sentence, we vacate that sentence and remand it to the district court for resentencing.
 
 V.
 
 37
 For the foregoing reasons, we affirm the judgments of conviction with respect to appellants Smals and Demory. We affirm Demory's sentence as well. Regarding appellant Smals, we vacate her sentence and remand to the district court for resentencing in accordance with this decision.
 
 
 38
 AFFIRMED IN PART; VACATED AND REMANDED IN PART
 
 
 
 [1]
 Although part of this conspiracy was committed in the Western District of Virginia, venue may have been proper there even if that had not been the case. The acts Smals committed in West Virginia were intended to directly impact a judicial proceeding in the Western District of Virginia. Several cases have held that venue is proper in a district where the defendant was not located when he committed the act, if the administration of justice in that district was harmed by the defendant's act. See United States v. Newsom, 9 F.3d 337, 339 (4th Cir.1993); United States v. Manfredi, 789 F.Supp. 961, 962 (N.D. Ind.1992)
 
 
 [2]
 Application Note 1 to Sec. 2X1.1 enumerates a list of "[o]ffense guidelines that expressly cover conspiracies." Every guideline on that list includes the word "conspiracy" in its title. See, e.g., U.S.S.G. Sec. 2A1.5 (Conspiracy or Solicitation to Commit Murder); U.S.S.G. Sec. 2T1.9 (Conspiracy to Impede, Impair, Obstruct, or Defeat Tax)
 
 
 [3]
 The only case relied upon by the government in defending Smals' sentence, United States v. Jamison, 996 F.2d 698 (4th Cir.1993), is not on point. That case addresses cross-references from Sec. 2J1.3, the perjury guideline, to Sec. 2X3.1, the guideline for accessories after the fact. Jamison does not concern the propriety of cross-referencing Sec. 2J1.3 via Sec. 2X1.1(c), nor could it have, given that the defendant in Jamison pleaded guilty to perjury, not to conspiracy to commit perjury. See id at 700